UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAVIEL WINTERS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-cv-10777 |
| | ) | |
| JULIE HAMOS, as Director of the Illinois Department of Healthcare and Family Services, | ) ) ) | Judge Thomas M. Durkin |
| | ) | |
|     Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ravel Winters brought this action against Defendant Julie Hamos, as the director of the Illinois Department of Healthcare and Family Services. Winters asserts claims of race and sex discrimination in violation of Title VII (Counts I and II), retaliation in violation of Title VII (Count III), discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") (Counts IV and V), and retaliation and interference with the exercise of his rights under the Family and Medical Leave Act ("FMLA") (Counts VI and VII). Before the Court is Defendant's Motion to Dismiss Counts I to VI of the Complaint. For the reasons explained below, Defendant's motion is denied in part and granted in part.

**BACKGROUND**

Winters is a disabled, black male who suffers from chronic abdominal pain and anxiety disorder. R. 37, Third Am. Compl., ¶¶ 4, 11. Defendant hired Winters in June 2014 as a public aid investigator. *Id.* ¶ 12. He began as a trainee and completed the trainee period in June 2015. He then began a four-month probationary period. *Id.* ¶

52. In January of 2016, Winters was certified as a public aid investigator and taken off probationary status. *Id.* ¶ 79. Despite applying to other positions, Winters is still employed by Defendant. *Id.* ¶¶ 8, 112.

Winters alleges that the discriminatory and retaliatory conduct (due to his race, gender, and disability status) began as soon as he was employed by Defendant. *See, e.g., id.* ¶ 20. Winters alleges that he was given heavier workloads and inadequate training, *id.* ¶¶ 26, 32, 46, rejected for various positions, *id.* ¶¶ 27, 112, not given performance reviews necessary for his advancement, *id.* ¶ 35, 51, 52, and was disciplined including a seven-day suspension, for including his attorney on an email containing confidential information, *id.* ¶¶ 77, 110. Winters alleges discrimination and retaliation based on both discrete acts and a hostile work environment. *See id.* ¶¶ 116, 121, 126.

Winters filed four charges with the Equal Employment Opportunity Commission ("EEOC") related to the above incidents. First, on October 3, 2015, Winters alleged discrimination based on his race and sex and retaliation for engaging in protected activities. R. 37, Ex. A. Specifically, he alleged that he had "been subjected to different terms and conditions than similarly situated non-black, female employees, including but not limited to, heavier workload and increased scrutiny." *Id.* He also alleged he received two deficient performance evaluations after he filed an internal complaint. *Id.* The EEOC issued a right to sue letter on August 22, 2016. *Id.*, Ex. B.

2

On April 28, 2016, Winters filed a second EEOC charge alleging discrimination based on race, color, age, and disability, as well as claims for retaliation and hostile work environment. Like his previous charge, Winters's allegations revolved around "being treated differently," "being subjected to heavier workloads and increased scrutiny," as well as retaliation through his receipt of two deficient performance evaluations. *Id.*, Ex. C. He also alleged he had been denied accommodations in violation of the ADA and had his FMLA rights interfered with because of his internal complaints. *Id*. The EEOC issued a right to sue letter on November 1, 2016. *Id.*, Ex. D.

On February 21, 2017, Winters filed his third EEOC charge, alleging discrimination based on race, sex, age, and disability, as well as retaliation. He complained of "different terms and conditions of employment, including . . . being denied a flex-schedule . . . [as well as] be[ing] disciplined and harassed." *Id.*, Ex. E. On March 7, 2017, the EEOC issued a notice of right to sue and dismissed his charge, noting it was "unable to conclude that the information obtained establishes violations of the statutes." *Id.*, Ex. F.

On April 21, 2017, Plaintiff filed his fourth EEOC charge alleging discrimination based on race, sex, disability, and retaliation, and complaining of "different terms and conditions of employment, including, but not limited to, receiving a poor evaluation . . . [and being] disciplined and harassed." *Id.*, Ex. G. Winters received a notice of right to sue on May 19, 2017. *Id.*, Ex. H.

3

Winters filed this action on November 21, 2016, before receiving his notice of the right to sue on his third and fourth EEOC charges. He has since amended his complaint to include those charges. Accordingly, the operative complaint is his Third Amended Complaint ("complaint"), R. 37, filed on June 28, 2017 after he received a notice of right to sue from the EEOC on his fourth charge. Defendant's motion to dismiss the complaint argues (1) Winters's complaint fails to provide Defendant with adequate notice of his claims, (2) Winters has failed to exhaust his administrative remedies, and (3) Winters fails to allege a hostile work environment.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

4

inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## DISCUSSION

### I. Plausibility

Defendant first argues Winters failed to provide adequate notice of his claims because the bases for the claims are "not decipherable" and are indistinguishable because Winters uses the open-ended phrase "including but not limited to." R. 43 at 4. But the federal pleading standards do not require Winters to point to each allegation that forms the basis of each claim. All they require are "factual allegations that give the defendant fair notice of the claim for relief and show the claim has substantive plausibility." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 517 (7th Cir. 2015). In any event, Winters points to the specific incidents that form the basis for each claim. For example, as to Count I, he alleges:

> Defendant has discriminated against Plaintiff and subjected him to different terms and conditions of employment based upon his race, including but not limited to failing to train him, failing to provide him with performance reviews, providing him with baseless poor performance reviews, failing to take him off of probationary status, providing him with an excessive workload, denying his Flex Time, suspending him for 7 days, and subjecting him to a hostile work environment.

R. 37 ¶ 117. The details of those activities are laid out in the general allegations section, which was incorporated into Count I. *Id.* ¶ 115. Winters has sufficiently

alleged detailed incidents and interactions that plausibly amount to discrimination and retaliation by Defendant.

Defendant also argues Winter's complaint is "unintelligible" because it forces Defendant to "scour [Winter's] allegations in an effort to decipher the grounds upon which he bases his claims." R. 43 at 5. Defendant cites only one case in support of its argument, which stands for the proposition that courts may dismiss "unintelligible complaints." *Id*. at 5 (citing *Griffin v. Milwaukee Cty.*, 369 F. App'x 741, 743 (7th Cir. 2010)). In *Griffin*, it was "impossible for the district court to identify the specific allegations against each defendant;" the complaint's allegations were "not easily retrieved or assimilated; only after 18 pages of mostly broad legal assertions does the complaint mention the custody battle that seems to be at the heart of the suit;" and it was unclear how each defendant participated. *Griffin*, 369 Fed. Appx. at 743. As described above, that is not the case here. Instead, Winters details his allegations in a chronological and coherent manner, listing each act that he believes contributed to the discrimination and retaliation against him. The Court finds Winters has plausibly alleged he suffered discrimination and retaliation by Winters because of his race, gender, and disability status.

## II. Failure to Exhaust Administrative Remedies

Defendant next argues Winters's claims should be dismissed because they fall outside of his EEOC charges. A plaintiff suing under Title VII "may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the earlier charges contained in the EEOC complaint." *Ezell v. Potter*, 400

F.3d 1041, 1046 (7th Cir. 2005). "To decide if additional claims meet that standard, we ask if they are like or reasonably related to those contained in the EEOC complaint. If they are, then we ask whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it. Claims are 'reasonably related' when 'there is a factual relationship between them.'" *Sommerfield v. City of Chicago*, 863 F.3d 645, 648 (7th Cir. 2017). The EEOC charge and the complaint "must describe the same conduct and implicate the same individuals." *Id*.

Winters's EEOC charges generally alleged race, sex, age, and disability discrimination as well as retaliation involving heavier workload, increased scrutiny, and deficient performance evaluations. Winters also alleged a hostile work environment, discriminatory discipline and harassment, and retaliation for his filing of internal complaints. These charges are sufficiently like the allegations of the complaint here. Defendant points only to Winters's allegations of failure to train, the denial of transfers, and the denial of job applications as not included in his EEOC charges. R. 43 at 6; R. 47 at 2. But taking the facts in the light most favorable to Winters, the failure to train and the denial of transfer and position requests are all related to the EEOC charges and the charges' allegations of "heavier workload," "increased scrutiny," and harassment due to Winters's gender and race. Accordingly, it is likely the complaint's current claims would have developed from the EEOC's investigation of the charges brought before it. Defendant's motion to dismiss on this basis is denied.

### III. Hostile Work Environment

Finally, Defendant argues that Winters has failed to plead a hostile work environment. A hostile environment is one that is "permeated with discriminatory intimidation, ridicule and insult." *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). To state a hostile work environment claim in this case, Winters must allege (1) he was subject to unwelcome harassment; (2) the harassment was based on his gender;[1] (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833-34 (7th Cir. 2015). "To rise to the level of a hostile work environment, conduct must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an *abusive* relationship." *Id.* (emphasis in original). In determining whether a workplace is objectively hostile, courts consider the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alamo v. Bliss*, 864 F.3d 541, 549-50 (7th Cir. 2017).

Defendant argues that Winters "makes no effort to identify how or why any of allegations are indicative of discrimination or retaliation based on his membership in

---

[1] In his response to the motion to dismiss, Winters concedes that he will withdraw his hostile work environment claims related to race and disability. R. 44 at 11.

8

a protected class, much less allege the requisite hellish workplace," R. 43 at 7, but fails to provide any support or explanation as to why Winters's complaint does not meet the standard of a hostile work environment. Nevertheless, the Court agrees that Winters fails to allege a hostile work environment claim. Winters alleges that the Defendant denied him training, failed to give him performance reviews or gave him baseless poor reviews, gave him an excessive workload, denied his Flex Time, and suspended him for seven days.[2] R. 37 ¶ 123. Although each of these incidents may suggest discrimination or retaliation, they do not constitute harassment so severe or pervasive to alter the conditions of employment and create an *abusive* working environment. Nor do Winters's allegations reflect the types of situations the Seventh Circuit has held to be plausible allegations of a hostile work environment. *Cf. Huri*, 804 F.3d at 834 (allegations of screaming, prayer circles, social shunning, implicit criticism of non-Christians, and uniquely bad treatment plausibly alleged a hostile work environment); *Alamo*, 864 F.3d at 550-552 (allegations that coworkers used offensive slurs, stole plaintiff's food, and physically threatened him over a two-year period, as well as allegations that he routinely complained to his supervisors of mistreatment and that those supervisors did nothing to curb the ongoing harassment were sufficient to survive motion to dismiss).

Winters argues the comments made regarding his gender support his allegations of a hostile work environment. R. 44 at 11. Those comments include Ms.

---

[2] Disciplining employees who violate company policies, such as violating confidentiality policies here, does not constitute a hostile work environment. *See Triplett v. Starbucks Coffee*, 2011 WL 3165576, at *6 (N.D. Ill. July 26, 2011).

9

Campos, his supervisor, stating that "girls catch on faster than the guys," R. 37 ¶ 22, that the men (including Winters) needed to "sink or swim," *id.* ¶ 23, and that she told Winters that she "wasn't going to hold [his] hand and be a babysitter," *id.* ¶ 28. While Winters may have taken offense to these comments, a mere offensive utterance does not raise the level of harassment to severe or pervasive. *See Ford v. Minteq Shapes & Servs., Inc.*, 587 F.3d 845, 848 (7th Cir. 2009) ("Title VII is not . . . a general civility code and will not find liability based on the sporadic use of abusive language."); *Ezell,* 400 F.3d at 1048 (supervisor's comments regarding age, sex, and race, such as "men are lazy and 'want to milk all the overtime they can get,'" were rude and inappropriate, but not severe and pervasive). Winters has not sufficiently alleged a hostile work environment based on the gender discriminatory comments Ms. Campos made.

Finally, Winters does not allege that his workplace was sufficiently hostile to interfere with his work performance. *See Alamo*, 864 F.3d at 549-50. In fact, he alleges that "[a]t all times relevant to the allegations herein, [Winters] was meeting the legitimate job performance expectations of Defendant." *See* R. 37 ¶ 13. He also alleges that the negative performance evaluations he received were inaccurate, misleading, and unwarranted. *See id.* ¶ 59, 109, 111. Further, although he alleges evaluations were delayed or never completed due to his race and gender, he was still promoted out of the trainee position, *id.* ¶ 52, and was later certified as a public aid investigator, *id.* ¶ 80. Accordingly, Winters has not plausibly alleged the hostile work environment interfered with his work performance. *See Griffin v. Potter,* 356 F.3d

10

824, 830 (7th Cir. 2004) (noting that a supervisor's alleged harassing conduct did not interfere with plaintiff's ability to do her job and therefore weighed against a finding of a hostile work environment).

Defendant's motion to dismiss as to the hostile work environment allegations is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, R. 42, is granted as to the hostile work environment allegations and denied as to Defendant's remaining arguments. If Plaintiff believes he can cure the deficiencies identified in this opinion, he may file a motion for leave to file an amended complaint on or before August 8, 2018. The motion should attach a redlined comparison between the current complaint and the proposed amended complaint, and it should be supported by a brief of no more than five pages describing how the proposed amended complaint cures the deficiencies in the current complaint.

ENTERED:

_Thomas M Durkin_
\------------------------------------------

Dated: July 18, 2018

Honorable Thomas M. Durkin
United States District Judge